JAMES LESLIE ADAMS, JR. *v.* STATE OF
MARYLAND

[No. 130, September Term, 1979.]

*Decided January 13, 1981.*

The cause was argued before SMITH, DIGGES, ELDRIDGE,
COLE, DAVIDSON and RODOWSKY, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with
whom was *Alan H. Murrell, Public Defender,* on the brief,
for appellant.

*Alexander L. Cummings, Assistant Attorney General,*

with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

The issue we are asked to decide in this case is whether a telephone call initiated by the police from the police station to a suspect, which is listened to by the victim of a crime on an extension phone for purposes of voice identification, amounts to an interception made in violation of the Maryland Wiretapping and Electronic Surveillance Law.

The pertinent facts are brief. At a jury trial in the Circuit Court for Anne Arundel County, the testimony revealed that the victim was awakened in the night by a pain on the side of her neck. She saw a man standing in front of her and became aware of blood running from her neck, down her arm and hand and onto the floor. Her attacker then struck her on the side, for no apparent reason. He then performed cunnilingus and raped her. Throughout this assault, in an attempt to persuade her assailant to spare her life, the victim engaged the man in conversation. When the intruder went to another room of the apartment, the victim seized the opportunity to escape and called the police. She was later treated for her injuries.

During the course of the police investigation the victim made tentative photographic identifications; however, the police decided to conduct a voice identification via telephone. The victim listened in on an extension phone within the station while a policewoman, Detective Deans, made the calls. The mouthpiece of the victim's extension phone was removed so that the receiving party was unaware of the presence of the victim. During each call Detective Deans represented herself as Miss Wetzel from the Department of Social Services. Upon the last of four calls, the victim, a student of music who had studied voice in college, immediately identified the appellant's voice as that of her attacker.

The appellant contends before us, as he did below, that the trial court erred when it failed to suppress the voice identification which was an unauthorized interception, pro-

cured in violation of Maryland wiretap laws. The State in rebuttal contends that use of the extension phone in this case was not an interception and thus, no court order was required. We turn to the statute to resolve this dispute.

Maryland's Wiretapping and Electronic Surveillance Law is codified in Maryland Code (1974, 1978 Cum. Supp.), §§ 10-401 to 10-412 of the Courts and Judicial Proceedings Article, and tracks extensively Title III of the Omnibus Crime Control and Safe Streets Act of 1968, presently codified as 18 U.S.C. §§ 2510-2520 (1976).

The Maryland Statute defines certain terms in § 10-401 as follows:

(1) *"Wire Communications"* means any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of communications;

(2) *"Oral Communication"* means any conversation or words spoken to or by any person in private conversation;

(3) *"Intercept"* means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device;

(4) *"Electronic, mechanical, or other device"* means any device or apparatus which can be used to intercept a wire or oral communication other than:

(i) Any telephone or telegraph instrument, equipment or facility, or any component thereof, (a) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (b) being used by a

communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties.

Section 10-402 provides in part, as follows:

(a) *Unlawful acts.* — Except as otherwise specifically provided in this subtitle it is unlawful for any person to:

(1) Wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire or oral communication;

(2) Wilfully disclose, or endeavor to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subtitle; or

(3) Wilfully use, or endeavor to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subtitle.

(b) *Penalty.* — Any person who violates subsection (a) of this section is guilty of a felony and is subject to imprisonment for not more than five years or a fine of not more than $10,000 or both.

(c) *Lawful acts.* — . . .

(2) It is lawful under this subtitle for an investigative or law enforcement officer acting in a criminal investigation or any other person acting at the prior direction and under the supervision of an investigative or law enforcement officer to intercept a wire or oral communication in order to provide evidence of the commission of the offenses of murder, kidnapping, gambling, robbery, any felony

punishable under the "Arson and Burning" subheading of Article 27, bribery, extortion, or dealing in controlled dangerous substances, or any conspiracy to commit any of these offenses, where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception.

(3) It is lawful under this subtitle for a person to intercept a wire or oral communication where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception unless the communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act.

Appellant maintains that while it is true that the federal and Maryland statutes are similar, they differ in at least one fundamental respect. The federal statute authorizes an intercept where only one of the parties to the communication consents; however, the Maryland statute is more restrictive, requiring the consent of all parties. The appellant logically argues that since he did not consent to the victim's use of the extension phone, the identification of his voice was made in violation of the Maryland statute.

The appellant further contends the two cases relied upon by the Court of Special Appeals in its decision are inapposite. In *Rathbun v. United States,* 355 U.S. 107, 78 S. Ct. 161, 2 L. Ed. 2d 134 (1957), *rehearing denied,* 355 U.S. 925, 78 S. Ct. 363 (1958), at the request of an extortion victim, the police used an extension phone to listen while the victim called the defendant. The Supreme Court held that, since the extension was ordinarily connected in the home of the victim and had not been installed for this specific purpose, the evidence was admissible because a telephone subscriber

might reasonably be expected to allow others to listen to his conversation.

In *Clark v. State,* 2 Md. App. 756, 237 A.2d 768 (1968), the Court of Special Appeals relied on *Rathbun* in holding that the evidence was admissible where an arson victim allowed police over the course of a week to listen on a telephone extension in the victim's home to various conversations with the defendant, in one of which he confessed. Chief Judge Murphy (then Chief Judge of the Court of Special Appeals and now Chief Judge of the Court of Appeals) speaking for the Court said:

> We hold only that the admissibility in evidence of the contents of a communication overheard on a regularly used telephone extension is not controlled by the provisions of the Maryland Wiretapping Act, since the Legislature never intended that the use of such an extension telephone would be considered as a means for "intercepting" or "obtaining" a telephone communication within the meaning of the act, and particularly Section 93 (a) thereof. [*Id.* at 765-66.]

Appellant contends that while these cases may have been dispositive of the issue at the time they were decided they are no longer controlling. Each was decided before the present federal and Maryland statutes. While the federal statute still allows intercept with one party's consent, the Maryland statute requires the consent of all. Appellant argues further that the only exception to the requirement that all participants consent is found in § 10-402 (c) (2), in which the crimes defendant was convicted of are not specifically enumerated. Thus, the appellant concludes the use of the extension phone in the instant case violated the Maryland statute.

The appellant asserts it is nonsensical to say that consent is required from all participants to intercept unless certain crimes are being investigated and then to say, that if police investigation is being conducted, the police in the ordinary course of their duties may intercept. However, this argu-

ment presupposes the correctness of its premise. In other words, the appellant would be correct if the use of a telephone extension, under the circumstances of this case, is a device under the statute used in intercepting. If it is not a "device", then the premise is faulty.

We return then to where we began. Does this use of a telephone extension, where the use made of the phone was not inconsistent with its natural purpose and where no additional devices were attached to the phone, constitute an intercept under Maryland Code (1974, 1978 Cum. Supp.), § 10-401 (3) of the Courts and Judicial Proceedings Article?

As we read the statute it seems plain that an intercept occurs when there is aural acquisition of the contents of a communication by the use of some "electronic, mechanical or other device", other than that which is supplied by a communications common carrier or being used by a law enforcement officer in the ordinary course of his duties. It is further plain to us that this was equipment supplied by the carrier for use consistent with the usual purpose. It was not a device placed on the line in order to receive the communication during its transmission; instead, it was furnished to the subscriber in order that the same communication may be received or transmitted at the same time by more than one person.

It is difficult for us to conceive that the legislature intended the use of an extension phone under the circumstances of this case to constitute a felony under Section 10-402. As Chief Judge Murphy said for the Court of Special Appeals in *Clark v. State, supra,* 2 Md. App. at 765:

> [W]e do not believe that the Legislature intended to place a severe restriction on the ordinary usage by subscribers of telephone extensions by denying the subscriber the right to allow a family member, an employee, a friend, or the police to listen to a conversation to which the subscriber is a party. Nor do we believe that the Legislature intended to make a criminal out of every person who would use a

telephone extension under circumstances such as are here present. . . .

The Appellant argues that *Clark* is neither controlling nor persuasive in light of Section 10-402 (c) (2) which permits interception of communication with the consent of only one party in certain named crimes. While this Court is fully aware of the legislature's expressed concern for protecting personal rights and that the State requires generally all parties to consent before an intercept may be permitted under the law, we also believe it is within the legislative wisdom to carve out an exception in the law where the General Assembly did not believe the law should operate.

We believe that when the legislature provided in § 10-402 (a) (1) that "it is unlawful for any person to — wilfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire or oral communication" and in § 10-402 (b) that "any person who violates subsection (a) of this section is guilty of a felony and is subject to imprisonment for not more than five years or a fine of not more than $10,000 or both," it did not intend to make such use of an extension phone a felony. To reach a contrary conclusion would mean that the legislature intended a scheme so that "every secretary who listens to a business conversation at her employer's direction in order to record it would be marked a . . . criminal," *Rathbun v. United States, supra,* 355 U.S. at 107, and parents who listen in on the conversations of their minor children would carry a corresponding stigma.[1] We think it unimaginable that the legislature intended such harsh consequences. We also fail to discern the difference between the telephone use employed by Dectective Deans and the victim in this case

---

1. *See* Simpson v. Simpson, 490 F.2d 803, 809, n. 17 (5th Cir. 1974) where it is noted that "Prof. Herman Schwartz, appearing for the A.C.L.U., stated his fear that the original version would permit intruders or other unauthorized persons to use extension phones without being subject to the prohibitions and penalties of the act. In the course of this objection, he made the following comment: 'I take it nobody wants to make it a crime for a father to listen in on his teenage daughter or some such related problem.' " [Extracted from Hearings on the Anti-Crime Program before Subcomm. No. 5 of the House Judiciary Comm., 90th Congress, 1st Sess., 989 (1967).]

and that of the business executive who puts a party on a squawk box, thereby allowing anyone in the room to hear the conversation or, in the instant circumstances, if Detective Deans had simply held the receiver away from her ear to let the victim hear the voice. *See Rathbun v. United States, supra,* 355 U.S. at 110-11. Such actions were certainly never intended to be criminal, nor are they forbidden by the statute.

It is therefore apparent that by tightening the federal regulations the Maryland legislature sought to continue its curbs on one-party consent intercept; however, in light of the common and wholly innocent uses of the extension phone it is also apparent that the General Assembly did not seek to include this facet of telephone communications within the concept of intercept. Specifically, in the case at hand, having the victim listen in on the conversation between Detective Deans and the appellant did not constitute an intercept as defined in § 10-401 (3) of the Courts Article.

The Appellant places some significance on the fact that the mouthpiece of the extension phone was removed. This did not substantially alter the instrument so that it became something other than a telephone. The police could have achieved the same result by having the victim hold her hand over the mouthpiece. Additionally, § 10-401 (4) (i) includes in its exception to electronic, mechanical, or other device "[a]ny telephone ... or any component thereof." The alteration made to the phone in this case certainly did not remove it from within the ambit of this provision.

For the foregoing reasons, we affirm.

*Judgment affirmed, appellant to pay the costs.*